In the matter of the final account of the NEW JERSEY TRUST AND SAFE DEPOSIT COMPANY, administrator &c., of J. Alfred Bodine, deceased.

[Argued November 6th, 1907. Decided January 8th, 1908.]

1. Where an agreement between an administrator and the persons interested in the estate contemplated a sale of the bonds of a corporation for the protection of the administrator and the reimbursement of the estate for moneys advanced by the administrator and the estate, and where any attempt by the administrator to collect claims in favor of the estate against the corporation would have compelled it to go into insolvency and would have prevented a sale of the bonds, the administrator was not liable for failing to collect the claims.

2. A settlement of an intermediate account of an administrator is *prima facie* correct; and, to justify a correction thereof on the final accounting, the *prima facie* case must be overcome by evidence.

3. The court, on the hearing of an exception to the final account of an administrator, based on a failure of the administrator to perform its duty, in that it consented to extravagant allowances to a receiver and his counsel, cannot review the action of the court of chancery in determining what was a reasonable compensation to the receiver and his counsel, and it must be assumed that the allowances were made after a consideration of the work done by them.

4. On the hearing of an exception to the final account of an administrator, based on the administrator consenting to extravagant allowances to a receiver and his counsel, it appeared that the administrator, after consulting with the receiver and his counsel and with one of the heirs of the intestate, concluded that it would be unwise to object to the claims of the receiver and his counsel. There was nothing to indicate that the administrator acted in bad faith in forming its judgment.—*Held*, that the exception was not established, especially in view of the fact that the court of chancery makes allowances only after examination of the facts.

5. Evidence as to the failure of an administrator to charge itself with a sum of money claimed to have been paid to it by a receiver examined, and *held* to show that such apparent payment was not in fact made, being a mere matter of bookkeeping.

On appeal from a decree of the Camden county orphans court.

The following are the agreements referred to in this opinion:

"Articles of agreement, made this sixteenth day of February, eighteen hundred and ninety-nine, between the New Jersey Trust & Safe Deposit Company, of Camden, New Jersey, a corporation of the state of New Jersey, party of the first part, and Phoebe J. Bodine, widow, and Ernest C. Bodine, Louis F. Bodine, Annabel B. Bellis, Jennie B. Johnson, Fannie B. Johnson, and Vincent Bodine, heirs at law of J. Alfred Bodine, deceased, late of the city and county of Camden, and state of New Jersey, parties of the second part.

"Whereas, the party of the first part, in the line of its business and corporate powers, is desirous of administering and settling the estate of the said J. Alfred Bodine, deceased, and

"Whereas, the Bodine Glass Manufacturing Company, a corporation of the state of New Jersey, a portion of the assets of which constitutes a part of the said estate of J. Alfred Bodine, deceased, is now in the hands of a receiver, and

"Whereas, J. Alfred Bodine, during his lifetime, together with Samuel Garwood, entered into a certain lease and agreement to purchase the plant and property of the Bodine Glass Manufacturing Company for the sum of $160,000.00, which contract they assigned to the Bodine Glass Works, a like corporation which was organized for the express purpose of purchasing said plant and continuing the business of said Bodine Glass Manufacturing Company, and

"Whereas, the terms of said lease and agreement to purchase have not been completed, and it is necessary to raise certain moneys to complete the same and take the said plant out of the hands of the receiver, and

"Whereas, the party of the first part is willing and ready to furnish and provide such moneys to enable the said Bodine Glass Works to secure the title to said plant upon the terms hereinafter mentioned:

"Now, therefore, in consideration of the premises and the sum of one dollar, to it in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, and in further consideration of the renunciation by the parties of the second part of their right to administer said estate of J. Alfred Bodine, deceased, in favor of the said party of the first part, it is hereby covenanted and agreed by the party of the first part as follows:

"*First.* That in all matters pertaining to the estate of J. Alfred Bodine, deceased, Charles S. King, Esq., or such other person or persons, if any, as the parties of the second part may hereafter appoint or substitute in the place of the said Charles S. King, shall act as counsel for the said administrator, as well as for the said heirs.

"*Second.* That the said party of the first part shall immediately furnish and provide all such moneys and sums of money as shall be required, or in any wise necessary to take up or buy any and all of the claims and debts owed by John J. Burleigh, receiver of the Bodine Glass Manufacturing Company, and release, pay, and discharge the said receiver of and from all of his said debts and liabilities, in order that the said receiver shall be enabled to convey the title to said glass works, plant, and property of the Bodine Glass Manufacturing Company to the Bodine Glass Works, the assignee of said lease and agreement to purchase according to the terms and intent thereof, all of which shall be done within two months from the date hereof.

"The party of the first part shall hold, as its security for so doing, the entire issue of $150,100 of the bonds of the Bodine Glass Works, secured by a first mortgage on said plant, pending a final adjustment and settlement in accordance with an agreement made, or to be made, between the said the Bodine Glass Works and the party of the first part hereto.

"*Third.* The party of the first part shall pursue and complete the administration of the said estate and file its final account and make distribution thereof at as early a date as possible, avoiding all unnecessary delays therein, and upon the settlement of the personal property of said estate, and upon the request of the heirs thereof, the balance of the said estate shall be turned over to said heirs and said administrator discharged, and, for the administration of said estate and performance of all the duties incident thereto, the parties of the first part shall receive out of said estate only such fees, commissions, and compensations as shall be prescribed by law.

"*Fourth.* It is hereby further agreed that all of the securities which may be found among the effects of the estate of J. Alfred Bodine, deceased, belonging to the estates of Joel Bodine, and of his brother, John J. Bodine, of which estates he was one of the executors, or belonging to any of his children for whom he acted as trustee, or belonging to any other parties, shall be delivered at once to the respective surviving executors of said estates or owners of said securities, and shall not be listed or appraised as part of the estate of the said J. Alfred Bodine.

"In consideration of the premises the parties of the second part hereby authorize and empower the said party of the first part, as administrator of said estate, to lend and advance to the Bodine Glass Works out of the funds of said estate, such sums of money from time to time, and for the time being, to an amount not to exceed in all the sum of twenty thousand ($20,000) dollars, as shall be necessary to provide sufficient funds to purchase materials and supplies and defray the expenses of continuing the business of said company, pending the final settlement in accordance with the contract between the Bodine Glass Works and said party of the first part hereto, it being hereby stipulated that such loans and advancements shall be properly secured to said estate by notes of said Bodine Glass Works, together with its bonds to be held as collateral thereon.

"In testimony whereof, the said New Jersey Trust & Safe Deposit Company has hereunto caused these presents to be signed by its president, attested by its secretary, and its corporate seal to be attached; and the parties of the second part have signed, sealed, and delivered the same on the day and year first above written.

"THE NEW JERSEY TRUST & SAFE DEPOSIT CO.

"(Signed)    B. F. FOWLER, *President.*

"Attest: J. ALLEN THOMPSON, *Secretary.*

| | |
|---|---|
| "PHOEBE J. BODINE. | [SEAL.] |
| "ERNEST C. BODINE. | [SEAL.] |
| "LOUIS F. BODINE. | [SEAL.] |
| "ANNABEL B. BELLIS. | [SEAL.] |
| "JENNIE B. JOHNSON. | [SEAL.] |
| "FANNIE B. JOHNSON. | [SEAL.] |
| "VINCENT BODINE. | [SEAL.] |

"Signed, sealed, and delivered in the presence of: J. Allen Thompson, Eugene B. Johnson, as to Phoebe J. Bodine and Ernest C. Bodine. Charles S. King, as to Louis F. Bodine. Thompson Hoover, as to Annabel B. Bellis. Eugene B. Johnson, as to Jennie B. Johnson, Fannie B. Johnson, and Vincent Bodine.

"Agreement made this sixteenth day of February, A. D. eighteen hundred and ninety-nine, between the Bodine Glass Works, a corporation organized under the laws of the state of New Jersey, party of the first part, and the New Jersey Trust & Safe Deposit Company, a like corporation of the state of New Jersey, party of the second part.

"Whereas, the party of the second part having been appointed administrator of the estate of J. Alfred Bodine, deceased, late of the city and county of Camden, state of New Jersey, and having agreed with the heirs of the said J. Alfred Bodine, deceased, to advance and provide such certain moneys as shall be necessary to pay and satisfy all of the remaining obligations of J. J. Burleigh, receiver of the Bodine Glass Manufacturing Company, and thereby enable him to transfer the plant and property of said company to the party of the first part hereto, pursuant to the terms of a certain lease and agreement to purchase between the said receiver and Samuel Garwood and J. Alfred Bodine, bearing date of June 30th, 1898, receiving therefor, and holding as collateral security for such advances and moneys the total issue of one hundred and fifty thousand dollars in bonds of the said Bodine Glass Works, secured by a first mortgage of like amount on the glass plant and factories, dwelling houses and all other property located at Williamstown, New Jersey, which said mortgage has been heretofore duly executed to the Colonial Trust Company of New York City, as trustee, and duly recorded in the Gloucester county clerk's office, in Woodbury; and

"Whereas, it is the desire of the parties hereto to negotiate and sell all of the said issue of bonds, secured by said mortgage, for the purpose of raising sufficient funds.

"*First.* To reimburse the said party of the second part for its advancement of moneys, with interest, to pay off the claims in the hands of the receiver of the Bodine Glass Manufacturing Company, and all expenses incurred in the settlement of the affairs of said receiver and vesting the title to the glass works property in the party of the first part.

"*Second.* To pay off the advancement of moneys to be made by the administrators of the estate of the said J. Alfred Bodine, with interest.

"*Third.* To pay off such obligations as the said J. Alfred Bodine in his lifetime, jointly with Samuel Garwood, became liable for, for certain purposes, the benefits of which accrued to the said Bodine Glass Works.

"*Fourth.* In payment of certain claims held by certain banks, trust companies, etc., against J. Alfred Bodine and Samuel Garwood jointly, for advancements made by them at various times, to preserve the integrity of the Bodine Glass Manufacturing Company prior to the receivership, to the end that the estate of J. Alfred Bodine may be cleared of all liabilities and obligations in connection therewith, same being in accordance with the agreements and understandings had by and between the said J. Alfred Bodine and Samuel Garwood during the lifetime of the said J. Alfred Bodine; these matters being a proper charge against the said Bodine Glass Works, and it at all times being understood by and between

said Bodine and Garwood, as sole owners of the stock of the Bodine Glass Works, that the said debts and obligations should be assumed by the Bodine Glass Works as soon as it was in proper shape to do so.

"*Fifth.* To pay off debts accrued up to this date against the said Bodine Glass Works, and further to provide the same with sufficient funds to properly conduct the business hereafter.

"Now, therefore, this agreement witnesseth, in consideration of the premises, that the party of the first part hereby ratifies and confirms all of the several parts of the contract between the party of the second part and the heirs of the said J. Alfred Bodine, in so far as it relates to any action or thing whatsoever to be done or performed by the said party of the first part, and hereby expressly agrees to immediately deliver to the party of the second part all of the bonds issued by the party of the first part, and secured by said mortgage to the Colonial Trust Company as aforesaid, to be held by the said party of the second part as collateral security for all moneys which it shall advance and pay out in the settlement of the liabilities and debts of the said J. J. Burleigh, receiver.

"And the said party of the first part hereby nominates, constitutes, and appoints the said party of the second part its true and lawful attorney and agent, for and in its behalf, to negotiate and sell all or any part of said bonds, secured by said mortgage, for an amount not less than ninety-five per cent. of their par value, and to receive and apply the moneys arising from their sale in the performance of the above agreement.

"And the party of the first part hereby ratifies and confirms any and all lawful acts and things which the party of the second part may do or perform in the said premises.

"And the party of the first part hereby further agrees to pay to the party of the second part for its services in the negotiations and sale of its bonds a commission of twelve and one-half per cent. on the par value of the entire issue or such portion of the same as may be sold or disposed of in settlement of claims.

"And the party of the second part hereby agrees on its part to pay out of said commission all the expenses incident thereto, including such commission to Charles S. King, Esq., as may be agreed upon, for and in consideration of services rendered to the parties hereunto in connection with this contract; it being expressly agreed that the aforesaid commission of twelve and one-half per cent. to be paid by the party of the first part to the party of the second part, shall include all commissions, expenses, claims or charges of every name and nature to be paid by the party of the second part in the marketing of said bonds; and the party of the first part shall be held harmless and released from any additional expense in connection therewith.

"And it is further agreed that during the period within which said bonds are being sold, or such further period as shall be desired by the party of the first part, that the said party of the second part shall have full and unrestricted access to the books and affairs of the party of the first part.

"And it is hereby further agreed that if for any reasons whatsoever, that shall thereafter appear, it shall be desirable and necessary, in order to consummate the loan and the sale of the bonds as aforesaid, that a new mortgage should be made, and a new trustee should be constituted,

that the present mortgage as now made to the Colonial Trust Company shall be canceled, together with the bonds secured thereby, and a new mortgage of like amount, tenor, and effect, together with a new issue of bonds accompanying same, shall be issued, as the said party of the second part may hereafter desire, at the expense of the party of the first part.

"And it is hereby further agreed that, in case the parties of the second part shall fail or neglect to sell all of said bonds within six months from date hereof, this contract and all the provisions thereof shall become void as to all bonds then remaining unsold at the option of the party of the first part at any time thereafter, immediately after the service of a ten days' notice in writing of such determination to avoid and terminate this contract, whereupon, and upon such termination of this contract, the party of the second part shall at once deliver to the treasurer of the party of the first part all of the bonds which shall then remain unsold : *Provided, however,* that in case not sufficient bonds shall have been sold at the end of said period to reimburse the party of the second part for the moneys advanced to take said property out of the hands of the receiver as aforesaid, such balance of moneys due the said party of the second part, with interest thereon, shall be paid to them by the party of the first part upon the delivery of said bonds so remaining in their hands.

"In testimony whereof, the said parties have hereunto caused these presents to be signed by their respective presidents, attested by their respective secretaries, and their corporate seals to be attached, pursuant to resolutions of their respective boards of directors, on the day and year first above written.

"BODINE GLASS WORKS,

"Per JOHN S. WEAVER, *Vice President.*

"Attest : CHARLES S. KING, *Secretary pro tem.*

"THE NEW JERSEY TRUST & SAFE DEPOSIT CO.,

"B. F. FOWLER, *President.*

"Attest : J. ALLEN THOMPSON, *Secretary.*

"Signed, sealed, and delivered in the presence of : Charles S. King.   J. Allen Thompson."

*Mr. Thomas E. French,* for the appellants.

*Mr. Lewis Starr,* for the respondents.

MAGIE, ORDINARY.

The matter brought up for review in this case arises upon five exceptions, filed in the orphans court, to various items contained in the final account presented in that court by the New Jersey Trust and Safe Deposit Company (which will hereafter be called the "trust company"), as administrator of J. Alfred Bodine, deceased.   Of these exceptions, the first one was sustained by the order of the court, and no appeal has been taken

from that action. The remaining four exceptions were dismissed by that court, and this appeal is to test the correctness of that court's conclusion.

Before dealing with these exceptions, it will be necessary, to make clear my conclusions, to state the facts which appear by the transcript to have been presented to the orphans court by proof. J. Alfred Bodine, in the latter part of his lifetime, had been interested in a corporation named the "Bodine Glass Manufacturing Company." This company had become insolvent, and a receiver had been appointed by the court of chancery, upon a bill filed by said Bodine. The receiver was permitted, by the court of chancery, to issue receiver's certificates and to carry on the business of the insolvent company.

After the lapse of considerable time, it would seem from the evidence, the receiver's venture in continuing the business was found not to have been profitable. At all events, the receiver was permitted by the court to enter into an agreement with J. Alfred Bodine and Samuel Garwood for the sale of the whole property, for the price of $160,000. The agreement contemplated that the purchase price should be paid in installments, and that the purchasers might go into possession and run the plant upon paying the first installment of $50,000. Bodine and Garwood thereupon caused the incorporation of a new company, called the "Bodine Glass Works," and each of them subscribed for nine hundred and ninety-nine shares of its capital stock. They assigned to that company (hereafter called the "glass works") the agreement which they had obtained from the receiver of the manufacturing company, paying nothing for said shares except by the transfer of said agreement. Thereafter the said glass works made a mortgage to secure the issue of its bonds to the amount of $150,000. It is evident from the proofs that it was expected that the bonds could be readily sold, and from the proceeds of their sale the agreement with the receiver could be performed and the whole purchase price be paid to him.

It also appears that, by the same agreement between Bodine and Garwood with the receiver, the receiver was to sell and dispose of some manufactured stock and apply the proceeds as a credit upon the purchase price of $160,000. Some amount

was thus obtained and credited upon the price, but how much is not made to clearly appear.

While affairs were in this situation, J. Alfred Bodine died intestate. He left a number of children, all of whom were of age. What estate he left was evidently in a precarious condition, because he was bound by his agreement with the receiver to pay all the purchase price that had not been paid. No part of it had been paid except the amount the receiver had obtained from the sale of manufactured stock. The bonds of the glass works remained unsold. Bodine was, furthermore, liable to claims of creditors of the glass works if he had not paid for the capital stock in that corporation by the transfer of the agreement to sell, made by the receiver. As that agreement required a large expenditure to enable the glass works to enforce it, it seems evident that it was no equivalent for the par value of the nine hundred and ninety-nine shares of the capital stock which had been subscribed for by him. Thereupon the parties entered into negotiations with the trust company, which resulted in two agreements of even date, and evidently intended to be supplemental. The two agreements are set out in the prefatory statement.

Without repeating the provisions of the agreements, it is sufficient to say that they recognize the necessity of raising money to complete the purchase from the receiver, and the trust company agreed to furnish and provide sums of money, as they should be required, to buy up all of the claims and debts owed by the receiver, and release and discharge the receiver from all his said debts and liabilities, in order that the receiver should be enabled to convey title to the glass works under the agreement. For the moneys so to be advanced, the entire issue of $150,000 of the bonds of the glass works was to be held by the trust company as security. The trust company furthermore was to become the administrator of J. Alfred Bodine and settle his estate. All the children of Bodine joined in one of the agreements and thereby consented to such administration, and further agreed that the trust company should advance from the funds of the estate such sums of money, from time to time, to an amount not exceeding $20,000, as should

be necessary to provide the glass works with funds to purchase materials and supplies and defray the expenses of continuing the business pending the final settlement between the glass works and the administrator, it being stipulated that loans and advances made out of the estate should be properly secured to the estate by notes of the glass works, with its bonds to be held as collateral thereon.

The other agreement was between the glass works and the trust company, and provided for the advance of money by the trust company and recognized that the trust company held, as security for such advances, the total issue of $150,000 in the bonds of the glass works. It expressed the desire of the parties to sell said bonds for the purpose of raising funds—*first,* to reimburse the trust company; *second,* to pay the trust company the advancements of money made by the administrator out of the estate of Bodine; and *third, fourth* and *fifth,* to pay other obligations on which Bodine was liable.

The second exception sought to charge the administrator, the trust company, with certain items due to the Bodine estate from the glass works, upon the ground that those items were collectible, and should have been collected by the administrator. The evidence makes it clear that the glass works had property out of which these claims, if enforced by suit, could have been paid. Upon that circumstance alone, it is strenuously urged that the administrator should be charged with those amounts which, it is said, could have been, but were not, collected by it.

The situation of the estate and parties must, however, be taken into consideration in determining whether the administrator was derelict in duty by not proceeding to collect from the glass works these claims, and whether, if such dereliction existed and could be set up by creditors of the estate, it can be set up by two of the parties who joined in the agreement with the trust company contained in the prefatory statement. The administrator owed such duties of vigilant care over the interests of the estate as were required by the exercise of a reasonable prudence in attempting to carry out the duties assumed by it as administrator, as modified and affected by the

agreement into which all the persons interested in the estate had entered, among whom were the two exceptants to this account. It is quite apparent from the proofs that if the' administrator had enforced these claims against the glass works, that corporation would have been obliged to cease manufacturing and go into insolvency. In such case, all hope of making sale of the $150,000 of its bonds would have been destroyed. That the contracts contemplated such a sale for the protection of the trust company in its advancements of money and the reimbursement of the estate of Bodine for moneys advanced by it, is perfectly plain. Conduct which would have destroyed all hope of such a sale would not have been prudent, and on the contrary would have left the estate in a worse position than before. I think, therefore, that the exception in question was properly dismissed by the orphans court.

The third exception relates to the failure of the administrator to include in the final account a note of the glass works for $1,200, given to J. Alfred Bodine in his lifetime. That note had been contained in the inventory, but in the first accounting of the administrator, allowance had been claimed for the amount of it, as being of no value. No exception was interposed at that time, and the account was settled. The settlement of an intermediate account presents a *prima facie* case which must be overcome in order to open it for correction of errors alleged therein. *Baker's Case, 61 N. J. Eq. (16 Dick.) 592.* It is not charged that this note was allowed in that accounting as of no value by any fraud or mistake, but if in fact there was mistake, it may now be corrected. To justify present correction, there should be something to show that this note was in fact an abiding obligation of the glass works. There is no such evidence, and I think therefore there has not been shown any mistake in the first account which claimed allowance for it as of no value.

It may be added that, if included as an asset of value, it would stand in the same position as other obligations of the glass works, which, for the reasons above given, I think the administrator properly declined to enforce.

The fourth exception claims that the administrator did not

perform its duty in respect to the settlement of the receiver's accounts in the court of chancery, and particularly with respect to the allowance to him and to his counsel for compensation. It is insisted that the administrator ought to have objected to the allowances because they were excessive.

It is impossible in this case to review the action of the court of chancery in determining what is a reasonable compensation to the receiver and his counsel. It is not to be assumed that that court, and the distinguished vice-chancellor who settled the case and advised the decree, made excessive and unwarranted allowances. The presumption is, and must be, that the allowances were made after a consideration of the work done by the receiver and his counsel. The particular charge in this case is that not only did the administrator fail to object to such extravagant allowances, but that, appearing by its counsel, it consented thereto.

The evidence on that subject is somewhat contradictory. I think there is proof thereby that the administrator, after consulting with the receiver and his counsel, and also with counsel of the heirs of Bodine, and one of the heirs who represented the others, reached the conclusion that, although the claims were large, yet that it would be unwise to attempt to interfere by objection thereto, and the reason seems to be that it was feared that this might open some questions respecting the sale by the receiver to the glass works, which might prove detrimental to the sale of the $150,000 of bonds, which were not yet disposed of. There is nothing to indicate that the administrator acted in bad faith in forming that judgment, and there seems to have been some reason to support it.

It is urged that because the counsel for the trust company appeared at the return of the rule to show cause in the court of chancery, and made no objection to the allowances, that that court was compelled to make allowances which were unfair and extravagant. But this contention assumes that the court of chancery makes allowances of this sort when consented to, while it is well known that, on the contrary, it examines such claims and is careful not to exhaust an estate by allowances that are greater than a fair compensation.

The fifth exception relates to the failure of the administrator to charge itself with $23,980.16 claimed to have been paid to it by the receiver under the order in the cause in the court of chancery. From the involved and not clear testimony, I have reached the conclusion that the facts, so far as discoverable, are that when the receiver prepared to apply to the court to permit the sale to the glass works to be consummated by conveyance, he had to exhibit to the court a receipt of $160,-000 as the purchase price, and his report shows that he did represent to that court that he had received that sum. In the amount thus represented as received, the whole, or a part, of a credit opened in his favor by the trust company to the amount of $135,000, must have been included. This was placed to his credit by the trust company, but the whole of it was not used, and does not seem to have been required to be used to enable the receiver to obtain from the court of chancery an order upon him to make the conveyance. The sum above named was not required, and the trust company charged back the amount which was not needed or used, and claims that it was a mere matter of bookkeeping. The receiver, however, in his representation to the court of chancery, declares that he received an overpayment of that sum, and procured to be inserted in the order of sale a direction that he should repay that sum to the estate of Bodine and to Garwood. As, however, the repayment was due, not to them, but to the glass works to whom they had assigned their agreement, this, in my judgment, merely indicates that the receiver was misled. The sum not needed for the purposes of the receiver was not required to be paid by the trust company. This exception was also properly dismissed.

The appellants failing in all these contentions, the decree must be affirmed, with costs.